## THOMPSON et al. v. EARGLE.

### No. 6048.

United States Court of Appeals Fourth Circuit.

Argued April 11, 1950.

Decided June 10, 1950.

Roger M. Heyward and Douglas McKay, Columbia, S. C., for appellants.

Thomas E. McCutchen and Henry H. Edens, Columbia, S. C. (Wise, Whaley & McCutchen, Columbia, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, and DOBIE, Circuit Judge, and HAYES, District Judge.

HAYES, District Judge.

This is an appeal by the defendants from a judgment in favor of the plaintiff in an action brought in the District Court of the United States for the Eastern District of South Carolina under the provisions of 46 U.S.C.A. § 688 and 28 U.S.C.A. § 41(1) (a) [now 28 U.S.C.A. § 1331 et seq.], awarding damages to the father and mother of a seaman on account of their pecuniary loss in the death of their son.

The appellants concede that the sole question for review is whether under the facts of the case the death of the deceased, Carrol H. Eargle, occurred "in the course of his employment". We hold that the question should be answered in the affirmative. The appellants were engaged in the repair and strengthening of the dams of the Santee-Cooper Reservoir in South Carolina. In doing this work materials were transported by tugboats and barges. The deceased was employed as a deck hand and the crew of the tugboat on which he worked consisted of himself and two oth-

1. Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444.

er deck hands and the Captain. It was a part of their employment to have living quarters and food on the boat. On the Saturday afternoon in question the crew quit work at 5 P.M. and left the boat, but the Captain left the deceased in charge of the boat. It was customary for some member of the crew to be on the boat at all times and Eargle was left in charge of the boat that night.

About midnight Captain Dean returned to the boat and found the deceased alone reading. Captain Dean invited his two companions, Hammock and Clapp, to come aboard. There was testimony that the four sat around and talked until 4 o'clock and decided to have something to eat. The food supply was furnished by the defendants. Hammock and Eargle started to cook some food and finding that there was no bread on the tug, Eargle went to another boat to get some bread and on returning fell into the water and was drowned.

It is conceded that Eargle was an employee on the ship and that the defendants were guilty of negligence. While it was customary to have three regular meals on the boat it was also a custom to eat whenever they were hungry. The evidence warrants the inference that Eargle was acting in obedience to the orders of the Captain of the ship by remaining on the boat that night and in preparing the meal for the Captain in connection with which he went to another boat to get a loaf of bread because there was no bread on his boat.

Under the provisions of the Jones Act, U.S C.A. Title 46 § 688, it is provided that: "in the case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable."

The courts have had frequent occasion to determine the question of what acts come within the course of employment. This court dealt with the subject matter in the case of Virginian Ry. Co. v. Early, 4 Cir.,

130 F.2d 548, 550. In that case the railway employee having arrived twenty minutes before working time went to a lunch room about ¼ mile from the shops and while returning to the place of work received an injury which caused his death. Our court held that accident occurred while he was in the course of his employment and in that connection said: "It is conceded that the scope of employment includes not only actual service, but also those things necessarily incident thereto, such as going to and from the place of employment on the employer's premises. * * * It is also well established that a temporary stoppage of work for purposes which are necessarily incident to the life of an employee does not put an end to the relationship of employer and employee, since such an occurrence must have been within the contemplation of the parties. This rule has been applied to such ordinary circumstances as resting temporarily, procuring drinking water, eating lunch on the premises, &c."

In the case of North Carolina Railroad Co. v. Zachary, 232 U.S. 248, 34 S.Ct. 305, 309, 58 L.Ed. 591, Ann.Cas.1914C, 159, the fireman was preparing for a trip. After inspecting his engine he went to his boarding house upon a personal errand and was struck and killed on the way. The court said: "there is nothing to indicate that this brief visit to the boarding house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine."

The question also arose in Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F.2d 15, 17 in which Judge Learned Hand speaking for the court said: "it seems to us that when a railroad provides shelter or food or both for its employees, and they are using the accommodations so provided to prepare themselves for their work, or to rest and recuperate, they must be regarded as in its 'employ.'"

It seems clear, therefore, from the foregoing authorities, and the principles of law therein enunciated, and the facts in this

case, it is clearly established that the deceased was in the course of his employment at the time of the accident.

The judgment of the lower court is accordingly affirmed.

Affirmed.