**Lillian V. ROBINSON, as Administratrix of the goods, chattels and credits of Frank Wallis Robinson, deceased, Plaintiff-Appellant,**

v.

**NORTHEASTERN STEAMSHIP CORPORATION, Defendant-Appellee.**

**No. 16, Docket 23502.**

United States Court of Appeals Second Circuit.

Argued Dec. 5, 1955.

Decided Jan. 5, 1956.

Jacob Rassner, New York City, Harvey Goldstein, New York City, of counsel, for appellant.

Kirlin, Campbell & Keating, Walter X. Connor and Matthew L. Danahar, New York City, of counsel, for appellee.

Before SWAN, FRANK and LUMBARD, Circuit Judges.

SWAN, Circuit Judge.

This is an action under the Jones Act, 46 U.S.C.A. § 688, tried before Judge Clancy and a jury, wherein the complaint was dismissed at the close of the plaintiff's case for failure to prove a cause of action. The plaintiff's decedent, Frank W. Robinson, was an able bodied seaman employed by defendant as a member of the crew of its steamship, which lay at a dock in the port of Buenaventura, Colombia, South America, on the date of Robinson's death. While returning to the vessel from shore leave on the night of July 19, 1949, he was run over by a locomotive within the Customs Compound adjacent to the dock. Neither the locomotive nor the Customs Compound was owned, operated or controlled by the shipowner.

Upon the trial two theories of negligence were asserted: (1) Failure of the master of the vessel to warn the decedent of the danger of using the Customs Compound as a means of egress from and access to the vessel; and (2) failure of Woods, a fellow seaman, to perform his voluntarily assumed duty of escorting Robinson back to the vessel when Robinson was so intoxicated as to be unable to take care of himself within the dangerous area of the Compound.

The first theory of negligence has been expressly abandoned in the appellant's reply brief.[1] The alleged negligence of Woods is now relied upon as requiring submission to the jury of disputed questions of fact. The appellant argues that Robinson was too drunk to take care of himself, that Woods voluntarily assumed the duty of escorting him back to the ship and performed this duty negligently in allowing Robinson to wander unattended into the Compound in his drunken condition, and that Woods' negligence is imputable to the defendant since Robinson's safe return would have been advantageous to the shipowner.

There was evidence from which the jury could have found that Robinson

---

[1]. At page 5 appears the statement: "Appellant does not rely upon the negligence of the master in failing to inform deceased of the dangerous condition of the dock compound." In the absence of such concession we should have held that under the circumstances disclosed by the evidence Judge Clancy's ruling was correct. See Farrell v. United States, 2 Cir., 167 F.2d 781, affirmed 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Wheeler v. West India S.S. Co., 2 Cir., 205 F.2d 354, affirming D.C., 103 F.Supp. 631.

was intoxicated at about 10:30 P.M. and could reasonably have inferred that he was still intoxicated when Woods invited him to ride back to the Compound in a taxicab at about 2 A.M., despite Woods' testimony that Robinson did not then appear to be intoxicated. When they reached the rear gate of the Compound, Woods found that he had no money and while he was talking with the taxi driver and the customs guard to persuade them to accompany him to the ship in order to get the fare, Robinson got out of the cab and disappeared. Woods did not again see him. His body was found about 3 A.M. within the Compound, where he had been run over by a locomotive.

■■ One who volunteers to assist another owes to such person the legal duty to use reasonable care in rendering the assistance he has undertaken to give. For example, if A invites B to ride in A's automobile, no one can doubt that A owes B the duty to drive with care.[2] It may be assumed *arguendo* that if the jury found Robinson was drunk, they could also have found that Woods was negligent toward him in allowing him to wander into the Compound unattended.[3] But such findings would not be enough to impose liability on the shipowner. To render the shipowner liable for Woods' conduct, he must be found to have violated a legal duty owed to the defendant. The appellant takes the position that a seaman who volunteers to assist a drunken shipmate on land assumes a duty of careful performance not only to him but also to the shipowner, since the latter will also be benefited by the safe return of the drunken employee. No authority has been cited for so extreme a contention. The case upon which the appellant relies, Buckeye Steamship Co. v. McDonough, 6 Cir., 200 F.2d 558, certiorari denied 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. 1357, is readily distinguishable. There the shipowner was held liable for the death of a drunken seaman who was drowned, when returning from shore leave, through the negligence of a shipmate who had undertaken to assist him to the vessel. In that case in assisting his shipmate the negligent sailor was acting in accordance with a long-standing custom, which had been recognized and approved by the shipowner, and consequently he was considered as acting within the scope of his employment.[4] In the case at bar there was no proof that Woods' actions were requested or authorized by the defendant or were in accord with a custom recognized by the defendant. Without such authorization Woods was not acting within the scope of his employment, and his negligence, if any, in performing his voluntary undertaking could not be imputed to the defendant even if successful performance would further the interests of the shipowner. See In re Southern Pac. Co., D.C.S.D.N.Y., 30 F.2d 723, 724, affirmed 2 Cir., 30 F.2d 725; The Edel, D.C.S.D.N.Y., 300 F. 731, 732. Accordingly no cause of action was proved and the case was properly taken from the jury.

Judgment affirmed.

---

2. Restatement, Torts § 323.

3. Restatement, Torts § 324.

4. This clearly appears in the opinion of the District Court, McDonough v. Buckeye Steamship Co., D.C., 103 F.Supp. 473, at page 475:
   "It is clear, from the testimony of Thomas Olson, the third mate of the Andrew Upson, that defendant's employees were authorized to assume control of seamen who were too intoxicated to be allowed on the dock alone. Olson related that the customary and established practice—at the various Great Lakes docks—was for the dock guard to detain these men and either turn them over to a sober shipmate if one appeared or else call the ship. The officer in charge of the ship then would personally go ashore or would send someone else to assist the seaman. This procedure was known to defendant and was the accepted and recognized practice invariably followed."