# BRAEN v. PFEIFER OIL TRANSPORTATION CO., INC.

No. 32.   Argued November 16, 1959.—Decided December 14, 1959.

*Benjamin H. Siff* argued the cause for petitioner.   With him on the brief was *Bernard Rolnick.   Arthur N. Seiff* was of counsel for petitioner.

*Edmund F. Lamb* argued the cause and filed a brief for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner brought this suit under the Jones Act, 46 U. S. C. § 688, and recovered judgment after a jury trial. He was employed as mate on respondent's barge. On the day prior to the injury the barge came to respondent's

repair yard to have a cargo pump fixed. At this repair yard respondent maintained a covered lighter, known as the *Winisook,* which was used as a work barge. Its inshore side was connected with the dock by a plank runway. Between the *Winisook* and the dock was a raft used for chipping, painting, and welding on such barges as might need that service. The barge on which petitioner worked was not at this time being serviced by the raft. But the raft had been used in repair work on the barge at other times and now needed new decking.

The barge was moored to adjoin the open water side of the *Winisook,* the crew of the barge using a catwalk around the sides of the *Winisook* whenever they left or boarded the barge. The morning after the barge was moored, petitioner's supervisor ordered him to lay some decking on the raft, as petitioner had experience as a carpenter. Petitioner accordingly prepared to go to work on this new job assignment. As he was standing on the catwalk, preparatory to starting his work, releasing a line on the raft to permit him to maneuver it into place so he could board it, the catwalk gave way, causing the injury. The Court of Appeals reversed the judgment for petitioner. 263 F. 2d 147. We granted the petition for certiorari because that decision seemed to be out of line with the authorities. 359 U. S. 952.

In *O'Donnell* v. *Great Lakes Co.,* 318 U. S. 36, a seaman was allowed to recover under the Jones Act even though he was injured on shore. The seaman was a deckhand. The ship was discharging her cargo through a conduit that was connected at its outer end to a land pipe by means of a gasket. The seaman in question was ordered by the master to go ashore to assist in repairing the gasket. While so engaged, he was injured by reason of the negligence of a fellow employee. We held that the words "in the course of his employment" as used in the Jones Act were not restricted to injuries occurring on navigable

waters, that they were broadly used by Congress in support of "all the constitutional power it possessed," *id.*, at 39, and that it was constitutionally permissible for Congress to supplement the remedy of maintenance and cure by extending a right of recovery in trial by jury to a seaman injured "while in the service of his vessel by negligence." *Id.*, at 43.

The test, as the *O'Donnell* case holds, is not whether the injury occurred on navigable waters, for that had been applied by the lower court, *id.*, at 38, which we reversed. Rather it is whether the seaman was injured by negligence while "in the course of his employment."

The injured party must of course have "status as a member of the vessel" for it is seamen, not others who may work on the vessel (*Swanson* v. *Marra Bros.*, 328 U. S. 1, 4), to whom Congress extended the protection of the Jones Act. Nice questions often arise concerning the status of particular workmen and whether their duties give them the status of "seamen" as that word is used in the Act. *Desper* v. *Starved Rock Ferry Co.*, 342 U. S. 187. And see *Gianfala* v. *Texas Co.*, 350 U. S. 879, reversing 222 F. 2d 382; *Senko* v. *LaCrosse Dredging Corp.*, 352 U. S. 370; *Butler* v. *Whiteman*, 356 U. S. 271. The court below apparently thought that at the moment petitioner was injured he was not a "seaman"; and that conclusion apparently turned on its view that to be such he had to be engaged at the time of the injury in work which was in furtherance of the navigation of the vessel. The court, indeed, held it error not to have given instructions to that effect.

At times the work done by an employee will be crucial in determining what his status is for purposes of recovery. *South Chicago Co.* v. *Bassett*, 309 U. S. 251, 260; *Swanson* v. *Marra Bros.*, *supra*; *Desper* v. *Starved Rock Ferry Co.*, *supra*; *Pennsylvania R. Co.* v. *O'Rourke*, 344 U. S. 334; *Grimes* v. *Raymond Concrete Pile Co.*, 356 U. S. 252;

*Butler* v. *Whiteman, supra.* Those cases, however, are not relevant to our present problem since the question whether petitioner's duties on the raft assignment were of the type to bring one not otherwise a member of a ship's crew within the scope of the Act is not presented in this case. Here we start with an employee who had the status of mate. The issue is whether petitioner, a mate and therefore a "seaman," was injured "in the course of his employment." We conclude that he was.

The fact that the injury did not occur on the vessel is not controlling, as *Senko* v. *LaCrosse Dredging Corp., supra,* 373, holds. A "seaman" may often be sent off ship to perform duties of his employment. *O'Donnell* v. *Great Lakes Co., supra.* In *Marceau* v. *Great Lakes Transit Corp.,* 146 F. 2d 416, a ship's cook was allowed to recover under the Jones Act when, pursuant to duty, he was returning to the ship and was injured on the dock while approaching a ladder used as ingress to the vessel.

We held that a seaman who was injured on the dock while departing from the ship on shore leave was in the service of the vessel and was entitled to recover for maintenance and cure in *Aguilar* v. *Standard Oil* Co., 318 U. S. 724. It was there recognized that a seaman is as much in the service of his ship when boarding it on first reporting for duty, quitting it on being discharged, or going to and from the ship while on shore leave, as he is while on board at high sea. *Id.,* at 736–737. We also held that a seaman injured in a dance hall while on shore leave was in the service of his ship in *Warren* v. *United States,* 340 U. S. 523, 529. These two cases were not brought under the Jones Act but involved maintenance and cure. Yet they make clear that the scope of a seaman's employment or the activities which are related to the furtherance of the vessel are not measured by the standards applied to land-based employment relationships. They also supply relevant guides to the meaning of the term "course of

employment" under the Act since it is the equivalent of the "service of the ship" formula used in maintenance and cure cases. See Gilmore and Black, The Law of Admiralty, p. 284. And see *O'Donnell* v. *Great Lakes Co., supra,* at 43; *Marceau* v. *Great Lakes Transit Corp., supra.*

Petitioner in the present case was ordered by a superior to perform some carpentry work on a raft which lay between the lighter and the dock. Petitioner was injured, as we have said, while on the catwalk attempting to move the raft into position for boarding. The raft was used to facilitate chipping, painting and welding on respondent's vessels. Cf. *Grant Smith-Porter Co.* v. *Rohde,* 257 U. S. 469. New decking was to be installed on the raft. The fact that the raft was not presently being used to repair respondent's barge is in our view immaterial. Petitioner was acting "in the course of his employment" at the time of the injury, for at that moment he was doing the work of his employer pursuant to his employer's orders. No more is required by the Jones Act, as the *O'Donnell* case indicates, petitioner being a seaman who was injured as a consequence of the negligence of his employer.

The judgment of the Court of Appeals is reversed and the judgment of the District Court is reinstated.

*So ordered.*

MR. JUSTICE HARLAN, whom MR. JUSTICE FRANK-FURTER and MR. JUSTICE WHITTAKER join, concurring in part and dissenting in part.

To assert a right of action under the Jones Act, a plaintiff must not only be a seaman, that is, a "member of a crew of any vessel," but must have been injured "in the course of his employment." 46 U. S. C. § 688; 33 U. S. C. § 903 (a) (1). Petitioner was concededly a member of the

crew of a vessel at the time the events in question took place. The controverted issue is whether a jury could have found that he was injured "in the course of his employment." I cannot agree that the nature of a seaman's duties at the time of injury is irrelevant to this latter issue.

Until today it has not been intimated in any opinion of the Court that I know of that a seaman may recover under the Jones Act for injuries arising out of activities unrelated to the maintenance or operation of his vessel, and not incidental to its affairs. In other words, the status of being a seaman does not alone bring the Jones Act into play. The character of the activities giving rise to the injury complained of is also an indispensable element to the existence of a federal right to relief under this statute. In the *O'Donnell* case, 318 U. S. 36, cited by the Court, it was stated (at 42–43): "The right of recovery in the Jones Act is given to the seaman as such, and . . . depends . . . on the nature of the service and its relationship to the operation of the vessel plying in navigable waters." There a crew member was ordered to go ashore momentarily to assist in the repair of a fixture being used in unloading the ship. That the work was being done on the dock was held immaterial to Jones Act liability. But that work was plainly in aid of the operations of the vessel on which O'Donnell was employed. See *Swanson* v. *Marra Bros.*, 328 U. S. 1, 4.[1] It is a far different matter to say, as the Court seems to say here, that a crew member

---

[1] In referring to the *O'Donnell* case, it was stated in *Swanson* (at p. 4): "We there held the ship owner liable, under the Jones Act, for injuries caused to a seaman by a fellow servant while the former was on shore engaged in repairing a conduit which was *a part of the vessel and used for discharging its cargo*. But in that case we sustained the recovery because the injured person was a seaman and an employee of the vessel, engaged in the course of his employment *as such*." (Emphasis supplied.)

may recover under the Jones Act for injuries arising out of activities not directly related to the affairs of the vessel, as in *O'Donnell,* and not incidental to his shipboard work, see *Thompson* v. *Eargle,* 182 F. 2d 717; *Marceau* v. *Great Lakes Transit Corp.,* 146 F. 2d 416. "In the service of the ship" is something quite different than "in the service of the shipowner." [2] In this case the seaman's employer also had a nonseaman-employing business, the repair yard, for which nonseaman activities were needed.

The Jones Act extended to maritime workers the negligence remedy provided for interstate railroad workers by the Federal Employers' Liability Act, 45 U. S. C. § 51. Under the FELA, and the uniform course of our decisions under it, see, *e. g., Southern Pacific Co.* v. *Gileo,* 351 U. S. 493; *Reed* v. *Pennsylvania R. Co.,* 351 U. S. 502, the remedy given by that Act applies only "to any person suffering injury while he is employed by such [interstate] carrier in such commerce." Under the Jones Act the remedy is given to "[a]ny seaman who shall suffer personal injury in the course of his employment." I think this means that a seaman's injury must have arisen out of his work as a seaman, just as a railroad worker's injury must have arisen out of his employment in interstate commerce. Otherwise it is difficult to see what purpose the "in the course of his employment" requirement of the Jones Act serves. Both the FELA and the Jones Act give a federal cause of action in negligence only in respect of particular kinds of injuries—under the FELA, those

---

[2] The maintenance and cure decisions relied on by the Court are all, like the *Marceau* case, instances of injuries incurred during leave-time activities, and are inapposite here. Whether, on the facts in the case before us, the petitioner would be found to have been working "in the service of his ship" for purposes of the doctrine of maintenance and cure, we need not decide, for the Court advances no reason for assimilating the issue of Jones Act coverage to that of the availability of maintenance and cure.

suffered *in interstate commerce,* under the Jones Act, those suffered *in work as a seaman.*

Thus, I think the issue of liability in this case turns on whether petitioner, when he fell from the faulty catwalk, was already engaged in the performance of his raft assignment, or whether he was simply *en route* to that assignment. If the former, there would, in my opinion, be no liability, for the record contains no basis for an inference that petitioner's assignment was related to the business of the vessel and, lacking such relationship, petitioner's injury cannot be deemed to have occurred "in the course of his employment." In that event any remedy would be that afforded by local law. Cf. *Swanson* v. *Marra Bros., supra,* at p. 7; 2 Larson, Law of Workmen's Compensation, § 90.22.[3] If, however, petitioner was injured *en route* to his raft assignment, the Jones Act would apply, for "the course of his employment," I think, continued until he commenced that assignment. Considering that the evidence presents a jury issue on this score, I concur in the reversal of the judgment of the Court of Appeals dismissing the complaint.

However, I dissent from the reinstatement of the judgment of the District Court. The relevant portion of the charge, to which respondent excepted, was vague and lacking in guidance as to the nature of the factual issue presented in this respect.[4] Moreover, in making liabil-

---

[3] I think the Court of Appeals was mistaken in considering that the Longshoremen's and Harbor Workers' Compensation Act would apply, for that Act, 33 U. S. C. §§ 902 (3), 903 (a) (1), excludes from its coverage a "member of a crew of any vessel," which this petitioner admittedly was.

[4] The charge, in pertinent part, read as follows:

"While it seemed at the outset to be some question as to whether or not he was a member of the crew, it does not seem to be seriously disputed that at the time of the accident he was a member of the crew.

"Whether or not at the time of the accident he was engaged in

ity turn on the question whether crew members normally performed work of this nature, the charge was in error.[5]. Such a factor might well be relevant in a case where there was doubt as to the ultimate issue whether an injury was suffered in the course of work[6] in some way related to the vessel in which the plaintiff seaman served. However, here it was not disputed that the petitioner's assignment to work on the raft was at the time wholly unrelated to any of the affairs of his vessel.

---

functions which are normally performed by a member of the crew, and as he stated, some functions he gave in detail, that he did perform various functions prior to the date of the accident, are for you to determine."

Subsequently the court amended the charge in this language:

"I did state that it is not seriously disputed that the plaintiff was not a member of the crew. Apparently according to the defendant's statement, he says that is a serious issue.

"So I will leave that as an issue."

[5] The two lower courts seem to have failed to come sharply to grips with the distinction between the two separate requirements of the Jones Act, namely, that the plaintiff have the status of a "seaman," and that his injury must have been suffered "in the course of his employment" as such. Most of the Jones Act cases decided by this Court have involved only the "seaman" issue. See, e. g., Senko v. LaCrosse Dredging Corp., 352 U. S. 370; Grimes v. Raymond Concrete Pile Co., 356 U. S. 252; Butler v. Whiteman, 356 U. S. 271. Such decisions are only remotely apposite here where the petitioner's status as a seaman is not disputed. It only confuses things to equate the issue of being a "seaman" with the issue whether the injuries suffered were "in the course of his employment."

[6] Shore leave cases such as Marceau, supra, present a different problem.