**Michael DANGOVICH, Plaintiff,**

v.

**ISTHMIAN LINES, INC., Defendant.**

United States District Court
S. D. New York.

May 1, 1963.

Jacob Rassner, New York City, for plaintiff.

Kirlin, Campbell & Keating, New York City, for defendant. Robert P. Hart, New York City, of counsel.

10. Sociedad Armadora Aristomenis Panama, S.A. v. Tri-Coast S.S. Co., 184 F.Supp. 738, 742 (S.D.N.Y.1960).

COOPER, District Judge.

This is an action for personal injuries allegedly sustained by the plaintiff, Michael Dangovich, on November 24, 1960. Jurisdiction of this court is based on the general maritime law of the United States and the Jones Act, 46 U.S.C.A. § 688.

By consent of the parties, the trial was held in two stages with the issue of liability to be determined initially.[1] All the proof on this issue was tried to the court without a jury. The following shall constitute findings of fact and conclusions of law.

On November 24, 1960, defendant's vessel, the S.S. Steel Seafarer, upon which the plaintiff was employed as an oiler, was moored to a pier at Khoremshahr, Iran. On that day plaintiff was given shore leave. Since he had never been in that port before, he inquired of a fellow crew member, while a superior officer stood within hearing distance, the shortest route to town. He was advised to walk across a railroad trestle located near the pier. After spending some time ashore, the plaintiff while returning to the ship by way of the railroad trestle fell from the catwalk and was injured. It appears that the catwalk was narrow and unguarded.

■ Plaintiff's action is versed in both negligence and unseaworthiness. No evidence has been advanced by the plaintiff that in any way could be interpreted as proving the defendant's vessel was unseaworthy. There being no basis to the unseaworthiness count, the court looks to the remaining issue of negligence under the Jones Act which provides, "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law."

In the instant case the court is faced with four issues:

*First*—Was the Plaintiff, while returning to the vessel from shore leave, "in the course of his employment" within the meaning of the Jones Act?

*Second*—Was the defendant under a duty to provide a safe means of egress and access to the vessel beyond the gangway to the plaintiff while on shore leave?

*Third*—Was the defendant negligent in failing to warn the plaintiff of the danger of using the trestle as a means of egress and access to the vessel?

*Fourth*—Is the defendant shipowner responsible for the negligent instructions, if any, given to the plaintiff concerning the best method of egress and access to the ship beyond the gangway?

■ As to the first issue, it is clear that a seaman may be in the course of his employment even though he is injured while on land. O'Donnell v. Great Lakes, etc., Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943). Recently in Braen v. Pfeifer Oil Transportation Co., 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959), the Supreme Court stated that a seaman is as much in the service of his ship when boarding it on first reporting for duty, quitting it on discharge, or going to and from the ship while on shore leave, as he is while on board at high sea.

■ This court finds that the plaintiff was in the course of his employment when he was injured while on shore leave on November 24, 1960.

■ Although an injury occurring ashore may be in the course of the seaman's employment, he cannot recover in a Jones Act cause of action unless he proves that the injury was caused by the negligence of the shipowner or any of the officers or employees of the shipowner, for negligence is the gravamen of the Jones Act. Norris, The Law of Seamen (2d Ed. 1962) Vol. 2 Pg. 844.

■ The second issue before us is whether the defendant was under any duty to provide the plaintiff while on shore leave with a safe means of egress

---

1. The second stage, dealing primarily with the extent of the injuries, was postponed pending determination of liability.

or access to the vessel beyond the gangway.

This question has been before the courts as early as 1925 in Todahl v. Sudden & Christenson, 5 F.2d 462 (9th Cir.). There the court held that the shipowner's duty to provide a safe place to work does not extend beyond the ship.

The Supreme Court in Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1942) held that a seaman was entitled to maintenance and cure when injured while on shore leave, and citing Todahl, supra, with approval said, 318 U.S. at page 736, 63 S.Ct. at page 936:

> "Consequently, the fact that the shipowner might not be liable to the seaman in damages for the dockowner's negligence, cf. Todahl v. Sudden & Christenson [9 Cir.], 5 F.2d 462, does not relieve him of his duty of maintenance and cure."

Subsequent cases have reaffirmed the rule that there is no duty on the shipowner to provide safe means of access or egress (beyond the gangway) to seamen on shore leave. See Paul v. United States, 205 F.2d 38 (3rd Cir. 1953); Wheeler v. West India S.S. Co., 103 F. Supp. 631 (S.D.N.Y.1951), aff'd., 205 F. 2d 354 (2d Cir. 1952); Lemon v. United States, 68 F.Supp. 793 (D.Md.1946).

This Court said in Wheeler at page 634 of 68 F.Supp.:

> "Though the defendant was duty-bound to provide reasonably safe means of immediate access to the vessel, (citations omitted), shipowners have generally been held not liable for unsafe conditions in places beyond the gangway not under their control when the seaman is there for his own purposes and not in the performance of his duties."

In the instant case, in addition to the fact that the plaintiff was on shore leave at the time of his accident and was not performing his duties as a seaman, there is no proof that the trestle or the catwalk were under the control of the defendant.

This issue was again before the Court of Appeals for the Second Circuit in Thurnau v. Alcoa Steamship Company, 229 F.2d 73 (2d Cir. 1956). The court held that a shipowner was under no duty to provide the crew with safe means of transportation from and to the vessel while on shore leave. In so holding, the Court cited the Paul and Lemon cases with approval.

■ This brings us to the third issue: whether the defendant was negligent in failing to warn the plaintiff of the danger, if any, in using the trestle as a means of egress and access to the area near the pier.

The Court of Appeals for this circuit has held that there is no duty on the shipowner to warn seamen of dangers existing in areas beyond the gangway. Wheeler v. West India S.S. Co., supra; Farrell v. United States, 167 F.2d 781 (2d Cir. 1948), aff'd., 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949).

In Robinson v. Northeastern Steamship Corporation, 228 F.2d 679 (2d Cir. 1956), the plaintiff was run over by a locomotive within the Customs Compound adjacent to the dock. One of the theories of negligence asserted by the plaintiff was the failure of the master to warn the deceased of the dangers of using the area within that compound as a means of egress and access to the vessel. Though the plaintiff abandoned this theory, the Court of Appeals said in a footnote at page 680 of 228 F.2d:

> " 'Appellant does not rely upon the negligence of the master in failing to inform deceased of the dangerous condition of the dock compound.' In the absence of such concession we should have held that under the circumstances disclosed by the evidence Judge Clancy's ruling (dismissing the action) was correct. See Farrell v. United States, 2 Cir., 167 F.2d 781, affirmed 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Wheeler v. West India S.S. Co., 2 Cir., 205 F.2d 354, affirming D.C., 103 F. Supp. 631."

See also Paul v. United States, supra.

From an inspection of the exhibits and the testimony in the instant case, it is clear that the condition of the trestle and the catwalk was obvious to all who used it.

"There was no duty upon the master to warn of the obvious." Wheeler v. West India S.S. Co., supra, 103 F.Supp. p. 634.

The fourth and last issue to be considered is whether the defendant shipowner is responsible for the negligent instructions (the proof on this point is sparce indeed) given by an alleged superior to the plaintiff on the best method of egress or access to the ship beyond the gangway.

As we have already seen, the shipowner had no duty to provide the plaintiff either with a safe method of egress or access to the ship or with any instructions pertaining thereto.

Can the defendant shipowner then be held liable when one of its agents or employees voluntarily undertakes the duty of instructing other employees as to the methods of egress and access to the vessel and does it negligently? There is no evidence or proof that the officer giving the instructions to Dangovich was requested or authorized by the defendant to do so. Nor is there any proof that this was a custom recognized by the defendant.

Without such authorization the officer was not acting within the scope of his employment and his negligence if any in performing his voluntary undertaking could not be imputed to the defendant. See Robinson v. Northeastern Steamship Corporation, supra; In re Southern Pacific Co., 30 F.2d 723 (S.D.N.Y.1929), aff'd. 30 F.2d 725 (2d Cir. 1929); The Edel, 300 F. 731 (S.D.N.Y.1923).

Assuming arguendo that the applicable law were otherwise, the proof both qualitatively and quantitatively is insufficient to meet the burden of establishing negligence.

Accordingly, the complaint is dismissed. Judgment for the defendant. So ordered.