**Robert F. TROST, Plaintiff-Appellee,**

v.

**AMERICAN HAWAIIAN STEAMSHIP COMPANY, Defendant-Appellant.**

**No. 46, Docket 28231.**

United States Court of Appeals Second Circuit.

Argued Oct. 10, 1963.

Decided Oct. 25, 1963.

Gray Williams, New York City (Boal, McQuade & Fitzpatrick, New York City, on the brief), for appellant.

Harvey Goldstein, Goldstein & Sterenfeld, New York City (Herbert W. Sterenfeld, New York City, on the brief), for appellee.

Before CLARK, MOORE, and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

The defendant steamship company appeals from a judgment for $17,410.86 and costs, recovered by the plaintiff after a trial before a judge sitting without a jury. Plaintiff suffered injuries while in a shoreside café, over four miles from his ship, allegedly as a result of the negligent failure of the ship's captain to warn him of the existence of an open trap-door through which he fell. On appeal, defendant contends that the District Court's holdings of negligence and derivative liability were unjustified. Our jurisdiction is based on the Jones Act, 46 U.S.C. § 688.

At the time of the accident, plaintiff was forty-five years of age and the purser of defendant's S.S. NEVADAN. In June of 1955, while the ship was moored to a pier in Bordeaux, France, the plaintiff went ashore with the captain to transact ship's business at the American Consulate and at the office of the ship's agent. After completing their business at the American consulate and while en route to the office of the ship's agent, the captain and the plaintiff decided to stop at a café to exchange currency and have some coffee. They had their coffee at a counter, the captain sitting between the plaintiff and the front door of the café. While they were so seated, some workmen entered the cafe to deliver produce and, in doing so, opened a trap-door in the café floor at the end of the counter, approximately fifteen feet from where the captain and the purser were seated. Although the opening in the floor was about five feet in length it was the plaintiff's contention that he was unaware of it. When they had finished their coffee, the captain and the plaintiff walked out of the café in single file, with the captain leading the way. The captain was five feet, nine inches tall and the plaintiff five inches taller, but the plaintiff maintained that he was unable to see over the captain's shoulder. Plaintiff further asserted that the captain stepped aside just before reaching the trap-door to avoid the fall, but that he proceeded straight ahead and fell into the opening, suffering his injuries.

In separately stated findings of fact and conclusions of law, the trial judge found that the captain's negligence was the sole cause of the accident. He expressly found that the trap-door was visible to the captain and not to the plaintiff, and hence concluded that the plaintiff was not contributorily negligent; he went on to hold that the captain was negligent in failing to call the opening to the plaintiff's attention. Finding that the injury occurred while the plaintiff was "in the course of his employment," he concluded that the Jones Act was applicable, and that the captain's negligence could be attributed to the defendant shipowner. Although we do not challenge any of his specific findings of fact, we disagree with his conclusions of both negligence and derivative liability, and we therefore reverse the judgment below.

■ The holding of negligence seems particularly vulnerable. It is hornbook law that before we may find the captain negligent, we would have to hold that he was under a duty to warn the plaintiff of any "hazards" which lay underfoot in the café. We cannot see how, in the light of the facts present here, we could so hold.

The plaintiff, as we have already indicated, was a mature officer of forty-five. We know of no principle of law which dictates that a captain is under a constant obligation to see that such a subordinate officer looks where he is going when walking on shore in a public place and some distance from the ship. The "hazard" in this case, moreover, was a trap-door with an opening about five feet long, and not a hidden or minute crevice; it does not seem unreasonable to expect that the plaintiff will himself be alert to this sort of "hazard," and not rely upon his captain to act as a nautical seeing-eye dog.

Without belaboring the point, several cases in this circuit have held that a shipowner is under no duty to warn his seamen of "hazards" which they might reasonably be expected to perceive for themselves. See Farrell v. United States, 167 F.2d 781, 783 (2nd Cir., 1948), aff'd, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949); Dangovitch v. Isthmian Lines, Inc., 218 F.Supp. 235 (S.D.N.Y. 1963); Wheeler v. West India Steamship Co., 103 F.Supp. 631 (S.D.N.Y.1951), aff'd per curiam, 205 F.2d 354 (2nd Cir.), cert. denied, 346 U.S. 889, 74 S.Ct. 141, 98 L.Ed. 393 (1953). In all of these cases, moreover, the dangers appeared to lie in close proximity to the ship. Since, as we have already emphasized, the accident in the present case occurred in a public restaurant more than four miles away, it would be totally unwarranted in the light of these earlier decisions to fasten liability upon the shipowner here.

But even if we were to affirm the holding of negligence, we do not see how we could hold the shipowner responsible. This is not to suggest that we have any quarrel with the District Court's holding that the plaintiff was injured while in the scope of his employment. In Braen v. Pfeifer Transportation Co., 361 U.S. 129, 133–134, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959), the Supreme Court held that "course of employment," as it is used in the Jones Act, is equivalent in meaning to "the service of the ship," as it has been defined in seamen's actions for maintenance and cure. And this latter phrase has admittedly been very broadly defined. In Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943), maintenance and cure were awarded to a seaman who was injured while on shore leave; in Warren v. United States, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951), a seaman was deemed "in the service of the ship" while cavorting in a shoreside dance hall.

■ We are thus willing to accept the fact that the plaintiff was "in the course of his employment" as he walked towards the fateful opening in the café floor. Our objection is to the implicit finding—necessary if the shipowner is to be held liable—that the failure of the captain to call the opening to the plaintiff's attention was within the scope of *his* (the captain's) employment.

For even if human beings in general have a legal, as well as ethical obligation to abide by the Sermon on the Mount and to look out for one another, *but see* Restatement of Torts § 314, it hardly would seem to be part of the function of a captain to ensure that his officers are aware of apparently visible obstacles on shore while miles from the ship. It appears, therefore, that the fact that the captain and the purser were "in the course of their employment" in terms of time and place, is not sufficient; a shipowner may not be held liable unless the particular act performed negligently was also in the scope of employment of the negligent employee. We do not consider it an element of the captain's employment to be on guard for the errant footsteps of his land-based purser and thereby to impose derivative liability on the ship.

While not squarely in point factually, several decisions of this court seem relevant. In Robinson v. Northeastern Steamship Corp., 228 F.2d 679 (2nd Cir.), cert. denied, 351 U.S. 937, 76 S.Ct. 834, 100 L.Ed. 1465 (1956), the administratrix of a seaman killed while returning from shore leave was denied Jones Act recovery. The decedent was apparently intoxicated at the time of the accident, and was being helped back to his ship by a fellow seaman. Although willing to assume that the assisting seaman was negligent and that the plaintiff's decedent was killed while in the course of *his* employment, this court refused to hold the shipowner responsible. Rather, we held in Robinson that the particular act performed negligently, aiding an intoxicated seaman to return to his ship, was not within the scope of the negligent seaman's employment. See also Thurnau v. Alcoa Steamship Co., 229 F.2d 73 (2nd Cir.), cert. denied, 351 U.S. 925, 76 S.Ct. 783, 100 L.Ed. 1455 (1956).

We find it unnecessary to reach the question whether the Jones Act may be applied to accidents occurring considerable distances from the ship in public places on shore which are in no respect under the control of the shipowner. Here, we find neither negligence nor a foundation for derivative liability.

The judgment is reversed.

CLARK, Circuit Judge (dissenting).

As the trial judge found, when the captain and the purser sat down at the lunch counter, the "captain sat between the plaintiff and the door that they had entered." So after the trap door was opened midway between them and the entrance door—an occurrence which the captain observed and the plaintiff did not—they started to leave, with the captain walking immediately in front of the plaintiff. "The plaintiff's vision was obscured by the body of the captain, who wore a homburg hat." The open trap door was "visible to the captain but not to the plaintiff." It is thus quite clear that the captain was fully apprised of the dangerous condition caused by the open trap door, and that the plaintiff had no knowledge of it, as was natural under the sequence of events I have just noted.

Under the circumstances it seems passing strange that the captain, who could see all this, did not do the human thing of even saying, "Look out" or "Watch your step." We do not need to resort to the traditional view that seamen are wards of admiralty or even rely on the Jones Act to see, with the trial judge, that the captain was guilty of rather gross negligence. Since they were on the ship's business and since there is no question of contributory negligence, the moderate award made the plaintiff should stand.