**Bobby F. WALKER**

v.

**SINCLAIR REFINING COMPANY.**

**Civ. A. No. 39206.**

United States District Court,
E. D. Pennsylvania.

Sept. 2, 1971.

See also 3 Cir., 405 F.2d 885.

Barton A. Pasternak, Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiff.

Timothy J. Mahoney, Krusen, Evans & Byrne, Philadelphia, Pa., for defendant.

## OPINION AND ORDER FINDINGS OF FACT AND CONCLUSIONS OF LAW

VANARTSDALEN, District Judge.

A seaman-plaintiff seeks damages for personal injuries sustained while employed by the defendant shipowner. Recovery is sought under maritime law for unseaworthiness and the Jones Act for negligence. The issue of liability was tried by the Court without a jury by agreement of counsel.

Although many of the facts are not in dispute, there is a serious dispute as to the actual happening of plaintiff's fall giving rise to the injuries. Plaintiff's version of the occurrence may be summarized as follows:—Plaintiff went

ashore during his off-duty hours while the defendant's ship was anchored in the port of Guayanilla, Puerto Rico. He wanted to purchase certain personal items before the ship sailed on a foreign voyage. The items were not aboard ship, the ship lacking a "slop chest" as required by law for ships sailing on foreign voyages. While ashore he was directed by the Master of the ship to report to a building near the shore at 3:00 p. m. in order to "sign-on" for the foreign voyage. A short distance from the beach, an ice cream truck stopped on a dirt road and was immediately surrounded by children, for whom plaintiff purchased ice cream. Shortly thereafter, another crew member called to plaintiff to go to the nearby building where the "sign-on" was to take place. As plaintiff turned away from the truck, he tripped and fell over a log lying at the side of the road, which log had been obscured by the children. The fall resulted in a fractured leg with complications in the recovery, asserted by plaintiff to be due to negligent medical treatment.

Defendant's version is that there was a canteen near the edge of the beach, and while plaintiff was ashore on his free time, he and another seaman were sparring or jostling with each other, in a friendly way, near the doorway of the canteen. Plaintiff, in attempting to dodge a blow or thrust from his fellow seaman, stepped back and fell off the porch or step of the canteen to the ground, thereby sustaining his injuries.

The Court, being the fact-finder, must therefore resolve these disputed issues. Most of the testimony, including that of plaintiff and of the eyewitness who claimed to see the scuffle between plaintiff and the fellow seaman, was presented by deposition. Plaintiff did, however, testify orally at the trial, briefly in his own behalf. Based on all of the evidence, the following findings of fact are made:

## FINDINGS OF FACT

1. Plaintiff, a 41 year old merchant seaman, was injured on April 17, 1965, at the Port of Guayanilla, Puerto Rico, while serving as a member of the ship's crew of the S/S AMTANK.

2. The ship, S/S AMTANK, was, on April 17, 1965, owned and operated by defendant, Sinclair Refining Company.

3. Plaintiff's rating aboard ship was a fireman-watertender. He had been a member of the crew of the S/S AMTANK from February 1964 until February 1965, when he went on vacation. Approximately one week before plaintiff was injured, he rejoined the ship for a coastwise voyage to Guayanilla, Puerto Rico.

4. The S/S AMTANK had no "slop chest" aboard. A slop chest is required for foreign, but not coastwise, passages. 46 U.S.C. § 670.

5. About 9:00 A.M., April 15, 1965, the S/S AMTANK arrived at Guayanilla, Puerto Rico, to load on board a cargo of oil. Due to a local strike, the ship was unable to dock, as originally intended, and had to anchor. The following day on April 16, 1965, the ship received orders to sail to Punta Cardon, Venezuela.

6. The original passage to Guayanilla, Puerto Rico, was a "coastwise" passage. The passage from Guayanilla, Puerto Rico to Punta Cardon, Venezuela, was a "foreign" passage. Before the ship's crew could sail, it was necessary for them to "sign-on" for foreign shipping articles before a United States Shipping Commissioner or his authorized representative.

7. On April 16, 1965, a sailing board was posted aboard ship, advising the crew that the ship would sail at 18:00 hours on April 17, 1965, for Punta Cardon, Venezuela; and that the crew should "sign-on" for the foreign passage at 17:-00 hours on April 17, 1965.

8. The crew was advised that the ship would have no slop chest aboard for the foreign sailing.

9. Plaintiff's duty shift aboard ship was from 8 o'clock to 12 o'clock. At about 12:45 p. m. on April 17, 1965, plaintiff went ashore in a launch with about five or six members of the crew. His

main purpose was to buy work gloves and tobacco for the voyage. No officer was aboard the launch.

10. The ship's master met plaintiff and the other members of the crew that came ashore with plaintiff at the pier, and the master advised the men that the "sign-on" would take place at 3:00 p. m. ashore in a building near the ship. The master indicated to the men the dirt road they should take to reach the building.

11. The commissioner who was in charge of the "sign-on" procedure would not come aboard the ship to conduct the "sign-on" because the ship lay at anchor and was rigged only with a Jacob's ladder instead of an accommodation ladder. An accommodation ladder would be safer and more easily climbed. It was for this reason that the "sign-on" was arranged to take place ashore. Usually, but not always, such a "sign-on" occurs aboard ship.

12. The plaintiff purchased the items that he needed from one of two cantinas, both of which were located near the beach and pier where the launch landed.

13. About 1:30 p. m., another seaman, Moise Jackson, came ashore in a launch with other seamen. They went to one of the cantinas, whre Moise Jackson saw plaintiff inside the cantina. There were at that time about a half a dozen men from the ship in the cantina. Moise Jackson remained in the vicinity of the cantina for about a half an hour during which time he had a beer. An ice cream truck was parked alongside of the cantina and some of the men were buying from the ice cream truck. Neither the cantina nor the ice cream truck were located on the pier or on the property of defendant.

14. Moise Jackson saw the plaintiff and another seaman, Christopher Jacobs, in a friendly way "hustling" (i. e., sparring), in front of the doorway of the cantina. Plaintiff ducked and stepped backward to avoid a punch which Jacobs threw at him. In doing so, plaintiff's feet stepped outside of the door causing him to fall. Jacobs did not intend to hurt or injure plaintiff. Plaintiff immediately grabbed his foot and in reply to a question from Jacobs as to what happened, said, "I am hurt. My foot. My foot." A few seconds later, plaintiff's feet began to swell.

15. Moise Jackson, who could speak Spanish, immediately arranged to have one of the local residents take plaintiff by truck to a small hospital or clinic in Guayanilla. Jackson accompanied plaintiff. The trip took about five or ten minutes. A doctor or intern at the clinic examined the leg and informed plaintiff and Jackson that the leg was broken. Jackson then went to the pilot house where the "sign-on" was in progress and reported plaintiff's injuries to the ship's master.

16. Because the facilities at Guayanilla were inadequate, the ship's master authorized the transfer of plaintiff to Ponce about 25 miles away. The ship's master advised the doctor or intern at Guayanilla who was in charge of transporting plaintiff to Ponce to give him the best medical attention available irrespective of the cost. Plaintiff was admitted to the Hospital De Damas in Ponce; which hospital was a United States public health contract facility for the area. Ponce is the second largest city in Puerto Rico.

17. Plaintiff remained in the hospital for 33 days. Plaintiff received serious complications from the injury. The leg failed to remain properly immobilized in the cast. A pulmonary embolism of the right lung developed while in the hospital as a direct result of the injury to his leg.

18. Maintenance and cure has been paid in full through March 10, 1966, the date of plaintiff's final discharge from the U. S. Public Health facility in Baltimore, Maryland, as an outpatient; there is no claim for any additional maintenance and cure.

19. Defendant afforded plaintiff the best medical care available.

412

20. The place where plaintiff fell was not located on any property owned or in any way controlled by defendant.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter on both the claim of unseaworthiness under maritime law and negligence under the Jones Act.

2. Maintenance and cure to the extent that plaintiff is entitled thereto has been paid in full.

3. There is no causal connection between the lack of a "slop chest" and lack of an accommodation ladder aboard the S/S AMTANK and plaintiff's injuries that he received ashore away from the pier and not on defendant's property.

4. Defendant was not negligent as to plaintiff.

5. Defendant at all times and places material to this cause of action afforded plaintiff a reasonably safe place in which to work.

## DISCUSSION

A motion for summary judgment heretofore filed on behalf of defendant was denied by the Court, and affirmed on appeal. Walker v. Sinclair Refining Co., 405 F.2d 885 (3rd Cir. 1969). For purposes of that motion only, the facts surrounding the occurrence immediately preceding and causing plaintiff's injuries were stipulated to substantially as contended by plaintiff, i. e., that plaintiff tripped over a log on the side of a road while leaving the ice cream truck area. Examination of the foregoing findings of fact will reveal that for determination of the ultimate issues on the merits, the contention of plaintiff as to those facts is rejected and that of defendant is substantially adopted; namely, that plaintiff fell while stepping backward to avoid a playful punch thrown by a fellow seaman during plaintiff's off-duty shore leave. In order, however, that there be no uncertainty as to the import of this decision, for reasons hereafter set forth, regardless of whether plaintiff's or defendant's version of plaintiff's fall is factually accurate, plaintiff is not entitled to recover damages for personal injuries beyond the maintenance and cure already paid, on any theory of liability presented, either on doctrines of unseaworthiness under general maritime law or negligence under the Jones Act.

■ The doctrine of unseaworthiness affords plaintiff no cause of action in this case. Plaintiff contends the ship itself was unseaworthy because (a) it had no "slop chest" as required by law, and (b) it was rigged with a Jacob's ladder rather than an accommodation ladder for the commissioner, which the commissioner justifiably refused to utilize to come aboard to "sign-on" the crew for the foreign voyage. As a result of either or both of these conditions, independently and jointly, plaintiff contends that he had to go ashore to buy supplies and to "sign-on" for the foreign passage, and that his being ashore "caused" his injuries.

■ It is unnecessary to decide whether either of these alleged deficiencies rendered the ship unseaworthy; because, in any event, if either created an unseaworthy condition, such unseaworthiness was, by no stretch of the existing law, a legal cause of plaintiff falling and fracturing his leg ashore. There is a clear, non-delegable duty on the part of the shipowner to maintain at all times a seaworthy vessel, the failure of which will impose liability without fault. Lowry v. A/S D/S Svendborg, 396 F.2d 850 (3rd Cir. 1968). The unseaworthy condition, however, must nonetheless be a legal cause of the injuries sustained. The causation test under the doctrine of unseaworthiness appears to be the classic "proximate cause" test. Ammar v. American Export Lines, Inc., 326 F.2d 955 (2nd Cir. 1964), cert. denied, 379 U.S. 824, 85 S.Ct. 48, 13 L.Ed.2d 34, reh. denied, 379 U.S. 985, 85 S.Ct. 640, 13 L.Ed.2d 579. Under the negligence theory of the Jones Act cases, there is authority that if the negligence causes in any way, however slight, the injury, there is sufficient causation. Rogers v. Missouri Pacific R. R. Co., 352 U.S. 500,

77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Ammar v. American Export Lines, Inc., *supra*.

██ Even failure of an absolute statutory duty does not impose liability unless causally connected with the injury. In Nolan v. Greene, 383 F.2d 814–817 (6th Cir. 1967), failure to maintain statutorily mandated fire extinguishers aboard ship, was held in no way causally related to seaman drowning. Smith v. United States, 66 F.Supp. 933 (D.C.Md. 1946), aff'd, 4 Cir., 159 F.2d 247, cert. denied, 331 U.S. 849, 67 S.Ct. 1735, 91 L.Ed. 1858, specifically involved alleged failure to maintain a proper "slop chest". Plaintiff claimed that he contracted tuberculosis from standing watch with wet feet because the "slop chest" did not have his size boots. The factual issues were determined against plaintiff, including failure to prove that the lack of boots "caused" the tuberculosis.

Plaintiff may have been ashore to purchase supplies by reason of the supplies not being aboard ship in a "slop chest". He may also have remained ashore to "sign-on" foreign articles because the shipping commissioner refused to board the ship by means of the rigged Jacob's ladder. These two reasons, as well as shoreside recreation afforded the occasion for being ashore at the time and place that plaintiff was injured, but none of these reasons, singly or in conjunction with any other in any way caused plaintiff to fall and injure his leg. I find no causal connection whatsoever, either proximate, direct, substantial, remote, or slightest to the least extent (whatever may be the correct test) between the alleged unseaworthiness and/or negligence of defendant and plaintiff's injuries, irrespective of whether the version of plaintiff or defendant is accepted.

██ Having found as a fact that plaintiff fell while trying to avoid a friendly blow from a fellow crew member, it is appropriate to consider whether this could in some way give rise to a cause of action. Although cases have allowed recovery on the doctrine of unseaworthiness where a member of the crew was physically attacked by another crewman, it would appear that the assailant must be shown to have a vicious nature. Nowery v. Smith, 69 F.Supp. 755 (D.C.Pa.1946); aff'd 161 F.2d 732 (3rd Cir.1947); Jones v. Lykes Bros. SS Co., Inc., 204 F.2d 815 (2nd Cir. 1953), cert. denied, 346 U.S. 857, 74 S.Ct. 72, 98 L.Ed. 370. Notice of the dangerous propensities, however, is not essential, if the crew member is shown to be vicious. Boudoin v. Lykes Bros. SS. Co., Inc., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955). In the present case there is nothing to indicate that the member of the crew who was sparring with plaintiff had any of the characteristics necessary to impose liability. The evidence is directly to the contrary; that the sparring was entirely friendly and voluntarily participated in by plaintiff. Therefore, no doctrine of unseaworthiness is applicable.

██ There is nothing to indicate that Jacobs acted in any way negligently toward plaintiff in sparring with him in the place and manner that occurred. No evidence indicates that he foresaw any danger to plaintiff. Even if deemed negligent as between Jacobs and plaintiff, and even though both members of the crew were in the course of their employment while ashore, their action in sparring with each other was not in furtherance of the ship's business and the negligence of Jacobs, if any, toward plaintiff would not be imputed to the shipowner. Robinson v. Northeastern Steamship Co., 228 F.2d 679 (2d Cir. 1956); cert denied, 351 U.S. 937, 76 S.Ct. 834, 100 L.Ed. 1465—fellow crewman negligently assisted intoxicated plaintiff-crewman.

██ Even if plaintiff's version of the events are accepted, the shipowner would not be liable under any theory of unseaworthiness or negligence. Plaintiff asserts he tripped over a log at the side of a public road in broad daylight. The doctrine of unseaworthiness would not apply in such a situation. Neither the log nor the public road were any part of the ship or under the shipowner's actual

or legal control or right of control at any time. The duty of the shipowner is to supply and keep in order the ship and the gear and appliances appurtenant thereto. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. It is impossible to contend that the public road was in some way a part of or an appurtenance to the ship and its gear. Although possibly a convenient approach and exit from the landing pier, and also an apropriate way between the pier and the building where the "sign-on" was to occur. There is no evidence that this was even a necessary way. The doctrine of unseaworthiness does not extend to injuries caused by instrumentalities ashore having no connection with the vessel. Harling v. United States, 416 F.2d 405, 406 (9th Cir. 1969), cert. denied, 397 U.S. 917, 90 S.Ct. 922, 25 L.Ed.2d 97.

■ There is no theory of negligence upon which the shipowner may be held liable for the log being in the side of the roadway. There is no showing that the shipowner or any members of the crew knew or should have known of the presence of the log, or that it presented any risk of harm to plaintiff. Even if, in fact, the shipowner knew of the presence of the log, to thereupon impose on the shipowner the duty, at its peril, to either remove the log (which it had no apparent legal right to do), or to warn plaintiff of such an obvious physical hazard, would be to impose a form of absolute guarantee for the safety of the crewman far beyond any present concepts of negligence, whether on land or sea.

In Trost v. American Hawaiian Steamship Co., 324 F.2d 225 (2d Cir. 1963), cert. denied, 376 U.S. 963, 84 S.Ct. 1125, 11 L.Ed.2d 981, a ship's officer who stepped around an open trap door inside a dimly lit building was held not to impose liability upon the shipowner, where the purser who was following the ship's officer was not warned by the officer and fell through the trap door. The language of that case is appropriate (p. 227):—

"For even if human beings in general have a legal, as well as ethical obligation to abide by the Sermon on the Mount and to look out for one another, but see Restatements of Torts § 314, it hardly would seem to be part of the function of a captain to ensure that his officers are aware of apparently visible obstacles on shore while miles from the ship. It appears, therefore, that the fact that the captain and the purser were 'in the course of their employment' in terms of time and place, is not sufficient; a shipowner may not be held liable unless the particular act performed negligently was also in the scope of employment of the negligent employee. We do not consider it an element of the captain's employment to be on guard for the errant footsteps of his land-based purser and thereby to impose derivative liability on the ship."

Plaintiff may be deemed to have been working and in the ship's employment and on the ship's business while traversing the road to go to the building to "sign-on" for the foreign passage. Defendant had an absolute duty to provide a reasonably safe place for plaintiff to work. Under the circumstances of this case, the road was a reasonably safe place. The shipowner breached no duty toward plaintiff, and the shipowner was not negligent.

■ At one time in these proceedings, plaintiff apparently sought damages on the additional theory that he received inadequate medical care, for which the shipowner would be liable. I do not understand that plaintiff presently so contends. In any event, the evidence is clear that the ship afforded plaintiff the best medical care available, and in no way breached its duty toward plaintiff in obtaining proper medical care for him. His contention, if any, in this regard appears to be that the Hospital De Damas, a United States contract public health facility in Ponce, Puerto Rico (the second largest city in Puerto Rico), negligently cared for his leg. Counsel has cited no authority, nor do I find any, that could, in such circumstances, impose liability on the shipowner.

Having found no theory upon which plaintiff is entitled to recover irrespective of whose version of the happening of plaintiff's injuries are accepted, judgment will be entered in favor of defendant.

To the extent the Discussion contains findings of fact and/or conclusions of law, the same are adopted as part of the findings of fact and conclusions of law.