**Donald R. McCLENDON**

**v.**

**OMI OFFSHORE MARINE SERVICE.**

No. 1:91–CV–0809.

United States District Court,
E.D. Texas,
Beaumont Division.

Nov. 25, 1992.

Thomas J. Swearingen, Warren G. Clark, Swearingen & Clark, Port Arthur, TX, for plaintiff.

G. Michael Jamail, Bernsen, Jamail & Goodon, Beaumont, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

Donald R. McClendon was cooking a potato in the oven in the galley of the GALVESTON on August 15, 1990. The potato was laced with mercury instead of the more traditional condiments. While plaintiff, McClendon, was cooking his unusual choice in the galley, the tow-boat GALVESTON was in drydock for numerous repairs, and in dire need of a new bottom, since it was bottomless.

Not surprisingly, McClendon sustained injuries while breathing mercury vapors escaping from the very hot oven containing the mercury-laden Idaho potato. McClendon, again unsurprisingly, reasons that because his injuries occurred on a tow-boat in drydock, he asserts he is a seaman and seeks refuge under that rock of protection, the Jones Act, and under general maritime law. This court must deny him safe harbor.

On July 20, 1990, the OMS GALVESTON entered Texas Bayou in Sabine Pass, Texas, on its way to dry dock for an extensive repair of its bottom. At that time the plaintiff met with Kenneth Baker, friend, port captain, and fellow amateur alchemist; he received from him one ounce of mercury, which the plaintiff offered to "cook" for him in an effort to retrieve gold.

The GALVESTON resumed its journey and arrived at Bolinger Shipyards, Larose, Louisiana, on August 8. It was put in dry dock on the thirteenth. Its engines were cut, its bottom was ripped away, and the captain and crew dispersed, with only the plaintiff remaining on board during the repairs. On August 15, he retired to the ship's galley and, in an effort reminiscent if not worthy of Paracelsus, attempted to produce gold through a combination of fire, mercury, and one half of an Idaho potato. The attempt failed. He was overcome by the fumes and seeks damages for his resultant injuries.

The plaintiff now comes before the court with a motion for summary judgment on his suit against the ship's owner, OMI Offshore Marine Services, for negligence under the Jones Act, 46 App.U.S.C.A. § 688, and general maritime law. The defendant also moved for summary judgment. Both motions are now pending before the court.

A plaintiff claiming seaman status under the Jones Act must first establish that he or she was employed upon a "vessel in navigation." *Wixom v. Boland Marine & Mfg. Co., Inc.*, 614 F.2d 956, 957 (5th Cir.1980). The issue of Jones Act seaman status is not susceptible to summary judgment except in the rare circumstance where the underlying facts are undisputed and the record reveals no facts from which reasonable persons could draw conflicting inferences. *Williams v. Weber Management Services, Inc.*, 839 F.2d 1039, 1040 (5th Cir.1987) (summary judgment affirmed); see, *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir.1970) (summary judgment denied). Operative criteria include whether or not the vessel was in dry dock, the nature and extent of repair operations and who controls them. *See, Wixom* at 957; *Hill v. Diamond*, 311 F.2d 789, 791–192 (4th Cir.1962); 1B Benedict on Admiralty § 11a (7th Revised Ed.) (collecting cases).

In this instance, McClendon was acting as a caretaker when injured aboard the GALVESTON at a time when it was in dry dock, minus captain and crew, without any power of her own, and undergoing extensive repairs by contract workers which would eventually take 77 days to complete and over $25 million to pay for. Its bottom had been substantially removed. She was utterly incapable of navigation. Plaintiff admitted at oral argument that, had the

chocks been pulled out from under her at the time he was injured, she would have slid from her berth into the water and down to the bottom of the river. In light of these undisputed facts, the court finds that reasonable persons could not conclude that the plaintiff was employed on a "vessel in navigation"; consequently, McClendon was not a Jones Act seaman and so cannot bring a Jones Act suit.

Plaintiff cites one case in his contention that, despite this, the GALVESTON was a "vessel in navigation" for the purposes of the Jones Act because it had returned from a voyage and was in repairs preparatory to making another. *Lawlor v. Socony–Vacuum Oil,* 275 F.2d 599 (2d Cir.1960). In that case, however, the vessel was moored in navigable waters, undergoing routine annual repairs, with its full complement of captain and crew, *id.* at 601—circumstances quite different from the case at bar.

A plaintiff claiming seaman status under the Jones Act must also establish that he was doing work in the "course of his employment" within the meaning of the Act; that is, activities which are related to the furtherance of the vessel. *Braen v. Pfeifer Oil Transportation Co., Inc.,* 361 U.S. 129, 130–33, 80 S.Ct. 247, 248–50, 4 L.Ed.2d 191 (1959); 1B Benedict on Admiralty § 11a (7th Revised Ed.). The court cannot find, nor does plaintiff supply, any case law to support the proposition that the practice of alchemy is within the duties of a seaman who is acting as a caretaker aboard a bottomless vessel under the Jones Act, even if that practice is shared by the captain of a nearby port.

Finally, a plaintiff injured entirely by his own negligence, thereby creating an unseaworthy condition, cannot recover under the Jones Act or general maritime law. *Keel v. Greenville Mid–Stream, Inc.,* 321 F.2d 903 (5th Cir.1963). The record is devoid of a single fact which would support the reasonable inference that the plaintiff was injured by any acts or omissions other than his own. In fact, the plaintiff admitted he was well aware of the dangers of combining fire, mercury, and Idaho potatoes in an enclosed, unventilated space.

Consequently, the plaintiff's motion for summary judgment is DENIED, and the defendant's motion for summary judgment is GRANTED.