**William COATS, Plaintiff,**

v.

**LUEDTKE ENGINEERING CO., and United States of America Defendants.**

**LUEDTKE ENGINEERING COMPANY, Third–Party Plaintiff,**

v.

**UNITED STATES of America, Third–Party Defendant.**

**Civ. A. No. 89–C–265.**

United States District Court, E.D. Wisconsin.

Aug. 2, 1990.

Hendrik Uiterwyk, Trapp, Farrance, Chastain & Uiterwyk, Tampa, Fla., and Robert L. Elliott, Cook & Franke, Milwaukee, Wis., for plaintiff.

Richard Zito, Corcoran, Skiver, Zito, Dekoter & Thole, Sibley, Iowa, and Donald H. Carlson, Riordan, Crivello, Carlson & Mentkowski, Milwaukee, Wis., for defendants.

Steven Biskupic, Asst. U.S. Atty., Milwaukee, Wis., for third-party defendant.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### FACTS

In April or May of 1987, plaintiff William Coats ("Coats") began to work for defendant Luedtke Engineering Company ("Luedtke") as a crane operator on board the vessel, Derrick Boat II ("DB II"). Coats was hired to use the crane to unload dredge material from barges and drop it on shore in a fill area. Luedtke provided Coats with access to and egress from the DB II by having Coats walk on a breakwater to where the DB II was moored. A filter cell was located along the breakwater which Coats would have to climb through in order to reach the DB II. In order to pass through the filter cell, Coats would have to use two three-step ladders which were located at both ends of the cell. On July 13, 1987, Coats was injured while passing through the filter cell and using a ladder on his way to the DB II.

On June 15, 1990, this court heard oral argument by the parties on the numerous

motions pending in this action. During the hearing, this court granted Coats' motion for leave to amend its complaint. This court notes that some of the parties' motions are to dismiss or in the alternative for summary judgment. The Seventh Circuit has held that if materials outside of the pleadings are presented to and considered by a district court, then the court should treat the motion as one for summary judgment. *Hill v. Trustees of Indiana University,* 537 F.2d 248, 251 (7th Cir.1976). This court has considered materials presented to the court outside of the pleadings in deciding the numerous motions, and therefore when appropriate the motion is considered as one for summary judgment.

Here is a list of the claims and motions relating to them, and this court's decision on each motion:

A. Coats' Claims:
1. Coats' claim v. Luedtke under the Jones Act;
   * Luedtke's motion for summary judgment is DENIED;
2. Coats' claim v. Luedtke under the Longshoremen's and Harbor Worker's Compensation Act ("LHWCA");
   * Luedtke's motion for summary judgment is GRANTED;
3. Coats' claim v. the United States under the Federal Tort Claims Act ("FTCA");
   * United States' motion to dismiss is GRANTED without prejudice;
   * United States motion for summary judgment is moot;
   * Coats' motion to strike the United States' motion for summary judgment is moot;
4. Coats' claim v. the United States under the Suits In Admiralty Act ("SIAA");
   * United States' motion for summary judgment is GRANTED;

B. Luedtke's Claims:
1. Luedtke's claim v. the United States under the Suits In Admiralty Act ("SIAA");

   * United States' motion for summary judgment is GRANTED;
2. Luedtke's claim v. the United States under the Federal Tort Claims Act ("FTCA");
   * United States' motion for summary judgment is DENIED.

## ANALYSIS

I. LUEDTKE'S MOTION FOR SUMMARY JUDGMENT AGAINST COATS BROUGHT UNDER THE JONES ACT AND THE LHWCA

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that a federal district court shall grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits indicate that no material facts are in dispute and that the moving party is entitled to judgment as a matter of law. *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987). The party moving the court for summary judgment has the burden of proving that no material facts are in dispute, and the court must review the record with all reasonable inferences being drawn in favor of the non-moving party. *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983); *Reardon v. Wroan,* 811 F.2d 1025, 1027 (7th Cir.1987).

Luedtke moved this court for summary judgment on Coats claims because it alleges that (1) Coats is not a "seaman," and therefore Coats cannot bring a claim under the Jones Act, 46 U.S.C.App. § 688 and (2) there is no evidence that Luedtke acted negligently as a vessel owner, and therefore Coats cannot recover under the LHWCA.

In *Johnson v. Beasley Const. Co.,* the Seventh Circuit Court of Appeals considered the historical interplay between the Jones Act and the LHWCA, and the coverage they provide to maritime workers. 742 F.2d 1054 (7th Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985). The court of appeals noted that in the year prior to the enactment of the LHWCA, the Supreme Court had defined

the term "seaman" broadly under the Jones Act which could have led to the conclusion that all maritime workers were "seamen." 742 F.2d at 1057 (quoting and citing *Int'l Stevedoring Co. v. Haverty*, 272 U.S. 50, 52, 47 S.Ct. 19, 19, 71 L.Ed. 157 (1926) and G. Gilmore & C. Black, *The Law of Admiralty*, § 6–21 at 330 (2d ed. 1975)). The court then went on to note that a broad definition of "seaman" did not occur because:

> The next year, however, Congress enacted the Longshoremen's and Harbor Worker's Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 et seq., which provides for the payment of compensation to all maritime workers injured upon navigable waters, regardless of the negligence of their employers, *except to an employee who is "a master or member of a crew of any vessel."* Through judicial interpretation, the phrase *"member of crew of any vessel"* eventually became equated with the term *"seaman,"* thus making coverage under the acts mutually exclusive.

*Johnson*, 742 F.2d at 1057 (citations omitted, emphasis added). Thus, if Coats qualifies as a "seaman" under the Jones Act, then he cannot obtain recovery against Luedtke under the LHWCA. *Swanson v. Marra Bros., Inc.*, 328 U.S. 1, 7, 66 S.Ct. 869, 872, 90 L.Ed. 1045 (1946); *Desper v. Starved Rock Ferry Co.*, 188 F.2d 177 (7th Cir.1951) *aff'd*, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952).

### A. Coats' Claim Under the Jones Act.

Luedtke argues that summary judgment on Coats' claim under the Jones Act should be granted in its favor because Coats is not a seaman. In *Johnson*, the Seventh Circuit set forth the test for determining when a person qualifies as a seaman under the Jones Act:

> Relying on the traditional three-prong test, but emphasizing the employee's duties as they relate to the transportation function of the vessel, we hold that in these equivocal situations [when a person's status as a seaman is disputed] *there is an evidentiary basis for submitting to the jury* the question whether the person was a member of the crew of a vessel [i.e. a seaman] at the time of injury if: (1) the person injured had a more or less permanent connection *with a vessel in navigation*, and (2) the person injured made a significant contribution to the maintenance, operation, or welfare of the *transportation function* of the vessel.

742 F.2d at 1062–63 (emphasis added). Luedtke argues that Coats is not a seaman because the undisputed facts indicate (1) that the vessel he worked on, the DB II, was not a vessel in navigation and (2) Coats had no responsibility for the transportation of the DB II.

### 1. Permanent Connection with a Vessel in Navigation Requirement

■ Luedtke has not disputed that Coats had a more or less permanent connection with the DB II (Coats Aff. ¶ 2). Instead, Luedtke argues that the DB II was not a vessel in navigation for purposes of the Jones Act. In *Johnson*, the Seventh Circuit explicitly defined what qualifies as a vessel in navigation under the Jones Act:

> The *"vessel in navigation"* requirement is, like the second part of our test, aimed at determining the injured party's status as a member of a "crew." Any floating structure, including those designed for special purposes, is a "vessel" capable of having a maritime "crew" *so long as the structure at some time serves as a means of transport* on water. "To be a vessel, the purpose and business must to some reasonable degree be the 'transportation of passengers, cargo, or equipment from place to place across navigable waters.'"

742 F.2d at 1063 (quoting *Bennett v. Perini Corp.*, 510 F.2d 114, 116 (1st Cir.1975) which in turn was quoting *Powers v. Bethlehem Steel Corp.*, 477 F.2d 643, 647 (1st Cir.1973), *cert. denied*, 414 U.S. 856, 94 S.Ct. 160, 38 L.Ed.2d 106 (1973)) (emphasis added). The Seventh Circuit also held that a member of the crew can recover under the Jones Act even "if the vessel is docked or anchored at the moment of injury.... So long as at the time of injury the vessel was not removed indefinitely or for the

season, the employee is still considered part of its 'crew,' if all the other requirements are fulfilled." *Johnson*, 742 F.2d at 1063–64.

The vessel which Coats was employed on, the DB II, is a flat deck barge that was equipped with a crawler crane (Elliot Aff. Exh. C at 1; Keillor Dep. at 58–59). The crane was used to remove fill materials, that had been dredged from the Milwaukee River, from a transport scow and to place them into a hopper device which would convey them through a chute to a fill containment site (Keillor Dep. at 25–26). The DB II could not propel itself through the water, but instead, usually relied on tug boats to either push or pull it (Kaiser Dep. at 25). The DB II, however, could move itself by placing the crawler crane's clam bucket on the lake bed in front of it and then pulling itself forward (Keillor Dep. at 58).

The primary functions of the DB II were: (1) to provide a flat and secure platform for the crane to rest on and (2) to transport the crane to wherever it had to be moved (Keillor Dep. at 58–59). Although the DB II had beams at each end of it which were lowered into the lake bed to secure it in place, the DB II's attachment to the lake bed was not permanent (Kaiser Dep. at 25). The beams were raised periodically during any given week, and the DB II then transported the crane to various positions along the fill containment site (Kaiser Dep. at 29–31). In addition, on weekends the DB II went back into the inner harbor (Kaiser Dep. at 29–31).

Finally, Coats was injured while on his way to work on the DB II while it was temporarily secured in the lake bed adjacent to the fill containment site (Complaint ¶ 4). Thus, the DB II is a vessel in navigation, as defined by the Seventh Circuit in *Johnson*, because its purpose and business was to transport equipment, i.e. the crane, and it was not removed permanently from service at the time of Coats' accident.

2. Significant Contribution to the Transportation of the Vessel Requirement

Luedtke also argues that summary judgment should be granted in its favor because Coats was not aboard the DB II for the primary purpose of assisting in navigation. In *Johnson*, the Seventh Circuit held that:

> If the Jones Act is to retain any limitations on its coverage, we believe the employee's duties with respect to the transportation function of the vessel should define them. We conclude that when the person's status as a member of a crew (seaman) is equivocal, "the work done by [the] employee will be crucial...."

742 F.2d 1062 (quoting *Braen v. Pfeifer Oil Transp. Co.*, 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959)). Thus, if Coats contributed significantly to the maintenance, operation, or welfare of the transportation function of the DB II, then the jury decides whether or not he is a seaman under the Jones Act. *Johnson*, 742 F.2d at 1062–63. On the other hand, if the facts indicate that he did not contribute significantly to the transportation of the DB II, then summary judgment in favor of Luedtke is appropriate. *Id.*

Coats argues that he did contribute significantly to the transportation function of the DB II because the DB II could not move without his assistance (Coats Aff. at ¶ 6). Coats claims that the following procedure would take place each time the DB II and crane were moved to a new location:

a. I would use my [Coats'] radio in the cab of my crane to call a tug to come out and move the scow [boat containing the fill to be moved into the containment site] and Derrick Boat 11.

b. I would secure the crane and move the chute onto the breakwater. I would use my crane to move an H-beam used to walk onto Derrick Boat 11 onto the breakwater.

c. I would secure the barge and the scow, along with my helper, using the ropes and would be ready to let go of the ropes when the entire assembly was ready to move.

d. Derrick Boat 11 is a "spud" vessel, which means that at its four corners it has metal devices which can be lowered

into the lake bed to secure Derrick Boat 11 in place. When it was time to move Derrick Boat 11, I and my helper would lift those spuds.

e. When the tug would arrive, I would advise the tug where the scow and Derrick Boat 11 were to be moved to. I would remain in radio contact with the tug throughout any move of Derrick Boat 11.

f. When we arrived at the next work site, I and my helper would lower the spuds on the four corners of Derrick Boat 11.

g. Mr. Cherney and I would secure the barge, the scow and Derrick Boat 11 and would let loose the lines from the tug.

7. I also sometimes moved Derrick Boat 11 and the attached scow myself without a tug using the clam shell bucket on my crane, following the same procedure described above.

(Coats Aff. ¶¶ 6–7).

Luedtke has not directly contested the procedure which Coats claims was necessary for moving the DB II, but instead claims that Coats' co-worker, the "oiler," was responsible for doing many of the transportation functions that Coats claims he performed (Feb. 9, 1990 Mem. in Support Motion for Sum. Judg. at vii–viii ¶¶ 38–47). Luedtke, however, has not submitted an affidavit or deposition of the oiler or any other evidence to contest Coats' claim that he performed the numerous transportation functions quoted above.

If Coats did in fact do all the activities he claims he did in regard to moving the DB II, then he would have significantly contributed to the transportation function of the DB II, as defined by the Seventh Circuit in *Johnson*, and the question of whether or not Coats was a seaman should be answered by a jury. Thus, as there is no evidence in the record at this time to contest Coats' claims regarding the transportation functions he performed, Luedtke's motion for summary judgment on Coats' claim under the Jones Act is denied.

### B. Coats' Claim Under the LHWCA.

The LHWCA provides a land-based maritime worker who is injured during the course of his employment with a cause of action against both the worker's employer and the owner of the vessel. 33 U.S.C. §§ 901 et seq.; *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). The remedies that are available to the injured worker from the employer and the vessel owner, however, differ significantly. Although the worker can bring an action for damages against the vessel owner if his injury is caused by the vessel owner's negligence under § 905(b), compensation is the worker's exclusive remedy against his employer under §§ 904 and 905(a). *Tran v. Manitowoc Engineering Co.*, 767 F.2d 223, 226 (5th Cir.1985); *Smith v. Eastern Seaboard Pile Driving Inc.*, 604 F.2d 789, 794 (2nd Cir.1979). If the vessel owner and employer are identical, then the injured worker may still bring an action to recover damages, but only for the employer's negligence as a vessel owner, not for his negligence as an employer. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 531 n. 6, 103 S.Ct. 2541, 2547 n. 6, 76 L.Ed.2d 768 (1983).

In the present case, Luedtke is both the owner of the vessel on which Coats was employed, the DB II, and the employer of Coats (Elliot Aff. Exh. A; Coats Aff. ¶ 2). In Coats' claim under the LHWCA, however, he only complains of Luedtke's actions as a vessel owner and states that he is bringing his claim specifically under § 905(b) (Complaint ¶ 12). In addition, none of the other causes of action in Coats' complaint state a claim under the LHWCA against Luedtke as an employer. Thus, the only apposite question under Coats' LHWCA claim is whether or not Luedtke was negligent as an owner of the DB II.

Luedtke has moved this court for summary judgment on Coats' claim under § 905(b) of the LHWCA on the ground that no condition aboard the DB II was responsible for Coats' injury. Luedtke claims that Coats' injury was caused by his use of the steel stairs in the filter cell which was

solely owned and maintained by the Army Corps of Engineers (Complaint ¶ 4). Luedtke argues that it cannot be negligent for any defects in the steel stairs because it did not own, provide, or maintain the stairs, and Coats use of the stairs occurred at times other than when he was working on the DB II.

On the other hand, Coats argues that Luedtke was negligent as a vessel owner because it failed to provide safe access to and egress from the DB II. Coats, however, has cited no cases where a court has held that a vessel owner is responsible for safe access to and egress from the vessel it owns. Luedtke, as an employer, may have an obligation to ensure that its employees have safe access to and egress from the vessel they work on, but this issue is inapposite under Luedtke's § 905(b) claim. The critical question is whether or not a defect in the DB II caused Coats' injury, thereby rendering the vessel owner, Luedtke, liable.

The Supreme Court has held that the liability of a vessel owner under the LHWCA is not confined solely to defects in the vessel, but may be extended to "areas ... under the active control of the vessel during the stevedoring [employment] operation." *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 167, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981). This language would permit Coats to proceed on his claim if the stairs in the filter cell were under the active control of the DB II.[1] The filter cell and the stairs contained therein, however, were not under the control of the DB II, and the owner of the DB II is not responsible for their condition merely because he owned the DB II (Coats Aff. ¶ 4). Any responsibility which Luedtke has for Coats using the filter cell to gain access to DB II comes from its role as an employer of Coats, not as owner of the vessel which Coats worked on. This critical distinction

is best seen by considering whether or not Coats would be allowed to proceed under § 905(b) if the owner of the DB II was Acme Corp. ("Acme") rather than Luedtke. In this hypothetical situation, Coats could not proceed against Luedtke under § 905(b) because Luedtke would not own the DB II. More importantly, Coats could not proceed against Acme because Acme would only be liable under § 905(b) for accidents caused by the DB II. As Coats' accident was allegedly caused by the filter cell stairs and his employer's failure to provide safe access to and egress from his job, Acme would not be liable.[2] Similarly, Luedtke, in its capacity as an owner of the DB II, is not liable for the accident which occurred in the filter cell. Thus, Luedtke's motion for summary judgment on Coats' § 905(b) claim against it is granted.

## II. THE UNITED STATES' MOTION TO DISMISS

### A. Coats' Tort Claim Against the United States.

On September 13, 1989, the United States moved this court to dismiss Coats' tort claim against it on the ground that this court lacks subject matter jurisdiction to hear the claim. Coats objected to the United States' motion and argued that this court has jurisdiction over his claim pursuant to (1) the Suits in Admiralty Act ("the SIAA"), (2) the FTCA, and (3) the doctrines of pendent and ancillary jurisdiction.

Coats asserts that this court has subject matter jurisdiction over his tort claim against the United States pursuant to both the SIAA and the FTCA. This assertion is wrong. Title 28 U.S.C. § 2680(d) exempts all maritime tort claims which are covered under the SIAA from coverage under the FTCA. Thus, if a federal court has jurisdiction to hear a tort claim pursuant to

---

**1.** This court notes that the parties dispute which party controlled the filter cell and the stairs contained therein. Luedtke claims that the Army Corp of Engineers had exclusive control over the filter cell and the stairs, and the United States disagrees (Feb. 7, 1990 Luedtke Brief in Supp. at 21, 25–26; Feb. 21, 1990 United States Brief in Opp. at 1–2). This factual dispute, however, is inapposite to Coats' claim under

§ 905(b) because it does not address the question of whether or not the filter cell was part of or under the control of the DB II.

**2.** Coats has admitted that no condition aboard the DB II itself caused his injury (Coats Dep. at 61).

the SIAA, then, as a matter of law, the court does not have jurisdiction to hear the claim under the FTCA. *Bearce v. United States*, 614 F.2d 556, 558 (7th Cir.1980).

### 1. Jurisdiction Under the Suits in Admiralty Act

■ The SIAA, specifically, 46 U.S.C. App. §§ 741 et seq., grants this court subject matter jurisdiction over marine tort claims against the United States in which a private wrongdoer would be subject to suit.[3] *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 176, 96 S.Ct. 1319, 1326, 47 L.Ed.2d 653 (1976); *Andrews v. United States*, 801 F.2d 644, 645 (3rd Cir.1986). The Seventh Circuit has considered the breadth of the SIAA and stated:

> The Suits in Admiralty Act (SIAA) was originally enacted in 1920 as a waiver of sovereign immunity in cases arising out of claims involving United States vessels and cargo. In 1960 the statute was amended to eliminate a variety of jurisdictional problems by bringing all maritime claims against the United States under the admiralty jurisdiction of the federal courts.

*Bearce*, 614 F.2d at 558; *see also Estate of Callas v. United States*, 682 F.2d 613, 619 n. 7 (7th Cir.1982). Thus, the critical question in determining subject matter jurisdiction under the SIAA is whether or not Coats' complaint involves a maritime claim which would provide this court with admiralty jurisdiction if the defendant were a private wrongdoer.

The Seventh Circuit has recently considered the United States Supreme Court's decisions concerning the breadth of the federal courts' admiralty jurisdiction and has stated:

> Thus there is a reasonable basis for concluding that the *Foremost* Court [Supreme Court decision] intended to limit admiralty jurisdiction in non-commercial maritime tort cases to torts involving navigation. In our view, a persuasive interpretation of *Foremost* would confine the admiralty jurisdiction in tort cases either to cases directly involving commercial maritime activity, or to cases involving exclusively non-commercial activities in which the wrong (1) has a potentially "disruptive impact" on maritime commerce and (2) involves the "traditional maritime activity" of navigation.

*Complaint of Sisson*, 867 F.2d 341, 345 (7th Cir.1989) (footnote omitted) (referring to *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982)). Essentially, the Seventh Circuit in *Sisson* created a test for determining when a federal court has admiralty jurisdiction over a claim, and the first part of this test is that the claim involve commercial maritime activity.

Coats' complaint against the United States fails the *Sisson* test because it does not involve maritime activity. Coats claims that he was injured as a result of the United States' and the United States Army Corps of Engineers' negligent design, construction, and maintenance of a filter cell (Amend. Complaint ¶ 4). Coats asserts that the negligent design and maintenance of the filter cell caused him to slip from the stairs which provided access to the filter cell and fall on his back to rocks in the filter cell (Complaint ¶ 4). Although Coats was using the steps while in the process of crossing the filter cell to reach the vessel on which he was working, the use of the stairs for the purpose of getting to the vessel does not involve maritime activity (Complaint ¶ 4).

The United States Supreme Court has held that:

> Admiralty jurisdiction has not been construed to extend to accidents on piers, jetties, bridges, or even ramps or railways running into the sea. To the extent that it has been applied to fixed structures completely surrounded by water, this has usually involved collision

---

**3.** Section 742 states in pertinent part:

In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States....

with a ship and has been explained by the use of the structure solely or principally as a navigational aid. *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 360, 89 S.Ct. 1835, 1839, 23 L.Ed.2d 360 (1968) (footnotes omitted). In Luedtke's third-party complaint, however, Luedtke alleges that the filter cell was a navigational aid, and argues that, therefore, jurisdiction is proper under the SIAA (Third–Party Complaint ¶ 7). This argument is unpersuasive.

Luedtke and Coats have cited no cases, and this court is unaware of any, where admiralty jurisdiction was based solely on the fact that a navigational aid was involved in the alleged tort. In the cases cited by Luedtke, admiralty jurisdiction existed because the accident involved the use of the navigational aid for the purpose of navigation. *Drake Towing Co., Inc. v. Meisner Marine Const. Co.*, 765 F.2d 1060, 1062–64 (11th Cir.1985); *Dibble v. United States*, 295 F.Supp. 669, 672 (N.D.Ill.1968).

In fact, in *Rodrigue* the Supreme Court held that jurisdiction under 46 U.S.C.App. § 761 et seq. was not present even though the accident occurred on alleged navigational aids. The Court stated "[m]oreover, the islands [artificial] were not erected primarily as navigational aids, and *the accidents here bore no relation to any such function.*" *Rodrigue*, 395 U.S. at 359–60, 89 S.Ct. at 1839 (emphasis added). The case before this court is similar to *Rodrigue*, in that neither Coats nor Luedtke claim that the alleged navigational aid, the filter cell, was being used for the purpose of navigation. Coats claims that he used the filter cell only to obtain access to the boat where he worked, which essentially is analogous to using the filter cell as a pier (Complaint ¶ 4). Thus, Coats' claim does not involve maritime activity, and subject matter jurisdiction under the SIAA does not exist.

### 2. Jurisdiction Under the Federal Torts Claim Act

The United States has moved this court to dismiss Coats claim under the FTCA because Coats filed his claim in this court before he had exhausted his administrative remedies, as required by 28 U.S.C. § 2675(a).[4] The Seventh Circuit has repeatedly held that § 2675(a) requires a claimant (1) to notify the appropriate federal agency of his claim against it, (2) provide the agency with adequate time, a minimum of six months, to respond, and (3) provide a sum certain in money of the amount of his claim. *Charlton v. United States*, 743 F.2d 557, 559–560 (7th Cir.1984); *Erxleben v. United States*, 668 F.2d 268, 271–73 (7th Cir.1981).

In Coats' brief in opposition to the United States' motion to dismiss, he admits that he did not wait six months after he filed his administrative claim with the Army Corps of Engineers to file his complaint against the United States in this court (Oct. 30, 1989 Brief in Opp. at 8–10). Coats claims that he did not wait the six months because if he had waited, then the two-year statute of limitations for filing a claim under the SIAA would have expired.[5] *Id.* Coats argues that this filing defect has been corrected because six months have now expired since he originally filed his administrative claim, and requests this court to either hold that the issue is moot or permit him to amend his complaint to assert that the six-month period has expired. *Id.*

---

**4.** Section 2675(a) states in pertinent part:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant and time thereafter, be deemed a final denial of the claim for purposes of this section.

**5.** Coats did not have a statute of limitations problem for his claim under the FTCA because the FTCA requires a claimant to present his or her claim to the administrative agency, not to file the claim in court, within two years. The statute is then tolled while the administrative claim is pending. *Morano v. U.S. Naval Hospital*, 437 F.2d 1009 (3d Cir.1971).

During oral argument on June 15, 1990, this court granted Coats' motion for leave to amend his complaint. On June 29, 1990, the United States moved this court to dismiss on the ground that Coats still had not exhausted his administrative remedies. During oral argument, the United States indicated that the Army Corp of Engineers stayed Coats' claim against it and transferred the file to the United States Attorney's Office for the Eastern District of Wisconsin as soon as Coats filed his claim with this court. Thus, the United States argues that the Army Corp has not had the six months which they are entitled to under § 2675(a) to resolve Coats' claim.

The Seventh Circuit has held that "[s]atisfaction of the administrative exhaustion requirement is a condition precedent to a federal court's jurisdiction over a subsequent suit. It cannot be waived." *Erxleben*, 668 F.2d at 271; *accord Gregory v. Mitchell*, 634 F.2d 199, 204 (5th Cir. 1981); *Bontrager v. Stevas*, 772 F.2d 419, 421 (8th Cir.1985). In addition, in *Gregory v. Mitchell*, the plaintiff argued, as Coats has done here, that the issue regarding the non-exhaustion of the six-month period was moot because the period had expired by the time the motion was briefed. 634 F.2d at 204. The Eighth Circuit Court of Appeals responded to this argument by stating:

> We cannot accept this proposition. Waivers of sovereign immunity must be strictly construed. Section 2675 is more than a mere statement of procedural niceties. It requires that jurisdiction must exist at the time the complaint is filed.
>
> Further, to allow the district court to stay or hold in abeyance the damage claim against the FDIC until the six month period accrues would tend to increase the congestion in our heavily burdened district courts. Instead of promoting congressional intent in enacting 28 U.S.C. § 2675 by "making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States," appellants' theory

would spur unnecessary litigation and slow down the process.

*Gregory*, 634 F.2d at 204 (footnotes and citation omitted). The Eighth Circuit's reasoning is persuasive. Thus, this court holds that Coats' claim against the United States pursuant to the FTCA is dismissed without prejudice.[6]

### 3. Jurisdiction Under the Pendent–Party and Ancillary Doctrines

■ Coats argues that this court has jurisdiction over his tort claim against the United States under the doctrines of pendent and ancillary jurisdiction. Coats, however, does not specifically explain how pendent or ancillary jurisdiction are created and cites no cases where a court has used either of these doctrines to create jurisdiction over the United States.

There are essentially two theories under which Coats can argue that this court has jurisdiction over his claim against the United States. First, Coats can argue that because this court has subject matter jurisdiction to hear his complaint against Luedtke under the Jones Act, it should use the doctrine of ancillary or pendent-party jurisdiction to hear Coats' tort claim against the United States. Second, Coats can argue that because this court has subject matter jurisdiction to hear Luedtke's third-party tort claim against the United States under the FTCA, this court should use the doctrine of ancillary jurisdiction or pendent-party jurisdiction to hear his claim against the United States. Neither of these theories, however, grant this court subject matter jurisdiction over Coats' tort claim against the United States.

The Supreme Court has held that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941) (citations omitted). The Court also has repeatedly held that a

---

**6.** This court notes that this basis for granting the United States motion to dismiss will become moot once the Army Corp of Engineers has had six months to render a determination on Coats' claim.

waiver of sovereign immunity is to be strictly construed in the government's favor. *See Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *McMahon v. United States,* 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951). In addition, the Court has held that "[i]t is not our [the judiciary's] right to extend the waiver of sovereign immunity more broadly than has been directed by the Congress." *United States v. Shaw,* 309 U.S. 495, 502, 60 S.Ct. 659, 662, 84 L.Ed. 888 (1940). Thus, a court has subject matter jurisdiction to entertain a claim against the United States only to the extent that Congress grants the jurisdiction by waiving immunity.

The fatal flaw of Coats' argument that the doctrines of pendent and ancillary jurisdiction create subject matter jurisdiction over his claim against the United States is that these are judge-made doctrines.[7] Only Congress, not the judiciary, has the authority to waive the United States' immunity from claims against it. *Shaw,* 309 U.S. at 502, 60 S.Ct. at 662; *See also Sherwood,* 312 U.S. at 586–88, 61 S.Ct. at 769–70; *Coleman v. U.S. Bureau of Indian Affairs,* 715 F.2d 1156 (7th Cir.1983); *Champaign–Urbana News Agency, Inc. v. J.L. Cummins News Co., Inc.,* 632 F.2d 680 (7th Cir.1980). Thus, the judicial doctrines of ancillary and pendent jurisdiction cannot be used to create subject matter jurisdiction over a claim against the United States, and Coats' claim against the United States is dismissed.

B. Luedtke's Claim Against the United States.

On September 13, 1989, the United States also moved this court to dismiss Luedtke's third-party complaint against it on the ground that this court lacked subject matter jurisdiction to hear Luedtke's claim under the SIAA. The United States claims that the SIAA does not provide this court with jurisdiction over Luedtke's complaint because the claim does not involve a tort committed on navigable waters that bears a significant relationship to traditional maritime activities.

Although Luedtke objected to the United States' motion, Luedtke amended its complaint to include a claim against the United States pursuant to the FTCA (Amended Third–Party Complaint ¶ 1). The United States then reiterated its argument that no jurisdiction exists pursuant to the SIAA, but conceded that this court has jurisdiction to hear Luedtke's third-party claim pursuant to 28 U.S.C. § 2675(a).

As discussed earlier, this court does not have subject matter jurisdiction to hear Coats' claim against the United States under the SIAA. Luedtke's complaint involves the identical accident as that contained in Coats' complaint. In essence, Luedtke is merely claiming that if Luedtke is liable to Coats, then the United States is liable to Luedtke. Thus, as Coats' claim against the United States does not involve traditional maritime activity, neither does Luedtke's, and this court does not have subject matter jurisdiction to hear Luedtke's claim under the SIAA.

This court, however, does have subject matter jurisdiction to hear Luedtke's complaint under the FTCA. As noted earlier, § 2675(a) provides that a party cannot file a claim in a court against the United States until after (1) the individual presents the claim to the appropriate federal agency and (2) the agency renders a final decision on the claim. The last sentence of § 2675(a), however, waives these jurisdictional requirements for claims against the United States made by a third-party plaintiff: "The provisions of this subsection shall not apply to such claims as may be asserted

---

7. The Supreme Court has stated that "pendent jurisdiction is a judge-made doctrine of expediency and efficiency" *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 120, 104 S.Ct. 900, 918, 79 L.Ed.2d 67 (1984); and ancillary jurisdiction has been described as:

The most important instance in which the federal courts hear cases over which no sub- ject matter jurisdiction is expressly conferred on them by the Constitution, or by federal statute, is when the ill-defined concept of "ancillary jurisdiction" is invoked.

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3523.

under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim." Thus, this court has jurisdiction over Luedtke's third-party complaint against the United States, and the United States' motion to dismiss Luedtke's FTCA claim against it is denied.

## III. THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

On February 7, 1990, the United States moved this court to grant summary judgment in its favor for both Coats' and Luedtke's claims against it. The United States claims that summary judgment is appropriate because the United States has not waived its immunity from suit for the type of claims Coats and Luedtke have brought. Specifically, the United States argues that 28 U.S.C. § 2680(a) excludes Coats' and Luedtke's claims from coverage under the FTCA, and therefore this court does not have subject matter jurisdiction over the claims.

### A. Coats' Claim Against the United States Under the FTCA

On February 26, 1990, Coats submitted a brief in opposition to the United States' motion for summary judgment and also moved this court to strike the United States' motion. Coats argues that the United States' motion should be stricken because the United States did not bring the motion when it moved this court to dismiss Coats' and Luedtke's FTCA claim on September 13, 1990. As this court has already held that it does not have subject matter jurisdiction to hear Coats' FTCA claim against the United States, both the United States' motion for summary judgment on Coats' claim, and Coats' motion to strike are moot.[8]

### B. Luedtke's Claim Against the United States Under the FTCA

The FTCA contains a number of exceptions to the Act's broad waiver of sovereign immunity. The exception which the United States claims applies to Luedtke's claim is 28 U.S.C. § 2680(a) which provides that no liability shall exist for:

[a]ny claim ... based upon the exercise or performance of the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The Supreme Court recently considered the breadth of this discretionary function exception in *Berkovitz v. United States* and held that:

conduct cannot be discretionary unless it involves and element of judgment or choice.... Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow....

Moreover, assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function was designed to shield. The basis for the discretionary function exception was Congress' desire to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." The exception properly construed, therefore protects only governmental actions

---

**8.** This court notes that Coats' argument in support of his motion to strike raises an interesting legal question regarding the nature of the United States' motion for summary judgment pursuant to § 2680(a). The United States essentially argues that summary judgment should be granted in its favor on the question of whether or not this court has subject matter jurisdiction to hear Coats' claim. The United States claims its motion is premised on concerns of subject matter jurisdiction because it is based on the applicability of § 2680(a) which determines whether or not the United States has waived its sovereign immunity. Although this court finds the United States' argument persuasive, it notes that the Seventh Circuit Court of Appeals has held that § 2680(a) is to be used by the United States as a defense to an action, and that it can be waived if it is not properly pleaded in an answer. *Minnesota v. United States,* 305 U.S. 382, 388–89, 59 S.Ct. 292, 295–96, 83 L.Ed. 235 (1938); Fed.R. Civ.P. 12(h); *but see Stewart v. United States,* 199 F.2d 517 (7th Cir.1952). Thus, it appears that the Seventh Circuit considers the applicability of § 2680(a) to involve a question other than subject matter jurisdiction.

and decisions based on considerations of public policy.

486 U.S. 531, 536–37, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988) (citations omitted; quoting *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984)).

Luedtke claims that the United States is liable under the FTCA because the United States (1) failed to maintain handrails on the stairs providing access to the ground in the filter cell and (2) failed to ensure that the stairs extended all the way to the ground (Amended Third–Party Complaint ¶¶ 10–14). The United States, however, argues that it is immune from Luedtke's claim because (1) the Army Corps of Engineers had properly delegated the responsibility for safety in the filter cell to Luedtke and (2) the design of the cell was covered by the discretionary exception of § 2680(a). Neither of the United States' arguments are persuasive.

■■■ First, there is a factual dispute as to which party controlled the filter cell and had responsibility for the safety of persons using the stairs within the filter cell. The United States claims that control of the cell and the responsibility for the safety of the workers working on the cell and other persons at the work site had been completely delegated to Luedtke in a contract (Moore Aff. ¶ 5). Luedtke, however, has cited numerous statements made by Army Corp of Engineers employees which strongly suggest that the United States had maintained some responsibility for the safety of individuals using the stairs in the filter cell (Running Dep. at 5–7, 13, 31–32; Moore Dep. at 19–22; Bauer Dep. at 8, 18–19). Thus, there is a dispute as to a material fact regarding who controlled the filter cell and who was responsible for the safety of individuals using the stairs within it, and the United States' motion on this ground is denied.

■■■ Second, the United States argues that § 2680(a) provides it immunity from Luedtke's claims because the lack of handrails on the stairs within the filter cell and the height of the closest step to the ground at the bottom of the cell are claims against the design of the filter cell which is a protected discretionary function of the government. Essentially, the United States argues that the decision to include the stairs in the filter cell was a discretionary decision by the United States which it cannot be held liable for. Luedtke, however, argues that because it is claiming that the United States was negligent in maintaining the stairs, instead of designing them, the United States is not protected by § 2680(a). Both parties are partially correct.

In *Indian Towing Co. v. United States,* the Supreme Court considered the difference between the discretionary decisions involved in building an object and the operational decisions involved in maintaining the same object and held:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Torts Claim Act.

350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48. (1955). The United States, however, argues that the Supreme Court's recent decision in *Berkovitz* soundly rejects a broad application of the Court's earlier holding in *Indian Towing.* The United States' interpretation of the Court's holding in *Berkovitz* is unpersuasive because the Supreme Court in footnote three of *Berkovitz* states "[t]he decision in *Indian Towing* ... also illuminates the appropriate scope of the discretionary function exception." *Berkovitz,* 486 U.S. at 538 n. 3, 108 S.Ct. at 1959 n. 3.

In the present case, the reasoning and analysis of *Berkovitz* and *Indian Towing* lead to the conclusion that the United

States is not afforded immunity from Luedtke's claim by the discretionary exception contained in § 2680(a). First, the United States is correct in its claim that the design of the filter cell is a discretionary function and that the United States is immune against claims regarding the negligence of the design. More specifically, the United States is immune from a claim attacking its decision to include stairs in the filter cell. But, identical to the situation involving the lighthouse in *Indian Towing*, once the United States constructed stairs in the filter cell, it became obligated either to use due care to ensure that the stairs were in good working order or to eliminate the steps. 350 U.S. at 68–70, 76 S.Ct. at 126–127; *see also American Exchange Bank of Madison v. United States*, 257 F.2d 938, 941 (7th Cir.1958). A decision concerning the standard of maintenance of the stairs, however, is not an "administrative decision[ ] grounded in social, economic, and political policy" which Congress sought to protect by § 2680(a). *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959 (quoting *Varig*, 467 U.S. at 814, 104 S.Ct. at 2764). Thus, the United States motion for summary judgment against Luedtke's claim under the FTCA is denied.

IT IS THEREFORE ORDERED that defendant Luedtke Engineering Company's motion for summary judgment on plaintiff William Coats' tort claim against it under the Jones Act is DENIED.

IT IS FURTHER ORDERED that defendant Luedtke Engineering Company's motion for summary judgment on plaintiff William Coats' tort claim against it under the Longshoremen and Harbors Workers Compensation Act is GRANTED, and Coats' LHWCA claim is DISMISSED.

IT IS FURTHER ORDERED that the United States' motion to dismiss plaintiff William Coats' tort claim against the United States based on the Suits in Admiralty Act is GRANTED, and Coats' SIAA claim is DISMISSED.

IT IS FURTHER ORDERED that the United States' motion to dismiss plaintiff William Coats' tort claim against the United States based on the Federal Torts Claim Act is GRANTED and Coats' FTCA claim is DISMISSED without prejudice.

IT IS FURTHER ORDERED that the United States' motion to dismiss third-party plaintiff Luedtke Engineering Company's claim against the United States based on the Suits in Admiralty Act is GRANTED, and Luedtke's SIAA claim is DISMISSED.

IT IS FURTHER ORDERED that the United States' motion for summary judgment on third-party plaintiff Luedtke Engineering Company's tort claim against the United States based on the Federal Torts Claim Act is DENIED.